UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN CONLEY

CV-13-7148

                  Claimant,

      -against-

**COMPLAINT**
(Jury Trial Demanded)

CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER
WING HAR tax id #940234, and SERGEANT
PATRICK BENEVENTI tax id #917294 and POLICE
OFFICERS JOHN DOES and/or JANE ROES Nos. 1-10,
OF THE 109th PRECINCT,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Claimant Steven Conley, by his attorney Rochelle S. Berliner, Esq., for his complaint, alleges as follows:

**INTRODUCTION**

1.    Claimant Steven Conley brings this action, pursuant to 42 U.S.C. § 1983, to redress the deprivation of his federal constitutional rights. More specifically, on September 19, 2012, at approximately 6:30 p.m., Defendant Police Officer Wing Har ("Defendant Har") and Police Officer John Doe No. 1 (whose name and shield number are unknown at this time), and Defendant Sergeant Patrick Beneventi ("Defendant Beneventi"), each of whom was a member of the New York City Police Department ("NYPD"), engaged in the unlawful search, false arrest and unlawful imprisonment of Mr. Conley as well as subjecting him to unnecessary, non-consensual, offensive contact and excessive force during the course of the unlawful search, false arrest and unlawful imprisonment.

-1-

2.     Mr. Conley brings suit to redress these aspects of the violation of his federal and state constitutional rights.

## JURISDICTION AND VENUE

3.     Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as Mr. Conley's claims arise under federal law.  Pursuant to 28 U.S.C. § 1367, jurisdiction is proper as the claims of Mr. Conley arise under the common law of the State of New York.

4.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because the events forming the basis of Claimant's Complaint occurred in that District.

## PARTIES

5.     Mr. Conley is a citizen of the United States.  He resides in the State of New York, Queens County.

6.     Defendant Har, Defendant Beneventi, and Defendants Police Officers John Does and/or Jane Roes Nos. 1-10 at all times relevant herein, were members of the New York City Police Department ("NYPD"). Upon information and belief, at all times relevant herein, they were assigned to the 109th Precinct.

7.     Upon information and belief, Defendant Har, Defendant Beneventi, and Defendants Police Officers John Doe and/or Jane Roes Nos. 1-10 are still members of the NYPD. At all times relevant herein, they were acting within the scope of their employment and under color of law.

8.     Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York.  It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York.  At all times relevant herein, it was the employer of the individually named Defendants.

## ADMINISTRATIVE PREREQUISITES

9.      On December 6, 2012, Mr. Conley filed a timely Notice of Claim with Defendant City of New York in the Office of the City Comptroller, in accordance with the General Municipal Law, concerning his arrest.

10.     At least thirty days have elapsed since Mr. Conley filed the Notice of Claim and adjustment or payment thereof has been neglected or refused. This action is commenced within one year and 90 days from the date of the occurrences alleged herein, as required under Section 50-i of the General Municipal Law.

11.     A 50-h hearing was held on March 5, 2013.

## FACTS UNDERLYING THE COMPLAINT

12.     At approximately 6:30 p.m. on September 19, 2012, Mr. Conley was riding his bicycle on Northern Boulevard, in Flushing, Queens, on his way home from a friend's house.

13.     At about that time, when Mr. Conley was between 153rd and 154th Streets, Defendants Har and John Doe No.1 were driving in an unmarked car alongside Mr. Conley and cut him off by turning into a parking lot without signaling, forcing Mr. Conley to drive up onto the sidewalk

14.     Defendants Har and John Doe No. 1 then exited their car and demanded Mr. Conley show them what was in his pockets.

15.     Defendants Har and John Doe No. 1 were both wearing plain clothes and neither of them displayed a shield or identified themselves as police officers when they confronted Mr. Conley.

16.     In response to their demand, Mr. Conley pulled out his keys from his right shorts pocket and held them up into the air to display them.

-3-

17.    Scared, and believing he was being robbed, Mr. Conley dropped his bicycle at the scene and immediately ran away, crossing Northern Boulevard.

18.    When Mr. Conley got across Northern Boulevard, he ran to the corner and then turned left down a residential street toward 35th Avenue.

19.    About halfway down that block, Mr. Conley turned around and saw that he was being chased by Defendant John Doe No. 1.

20.    When Mr. Conley turned back around to continue running, he saw a marked police car coming towards him from the direction of 35th Avenue.

21.    Defendant John Doe No. 1 yelled to Mr. Conley to get down on the ground.

22.    Only then did Mr. Conley realize that he was being chased by a police officer.

23.    Mr. Conley complied, began lowering himself to the ground, dropping his keys, and putting his hands in the air to show that he had nothing else in his hands.

24.    Defendant John Doe No. 1, having now caught up to Mr. Conley, threw Mr. Conley down on the ground.

25.    Defendant John Doe No.1 then pushed Mr. Conley's face into the sidewalk by placing his foot on the back of Mr. Conley's neck.

26.    Mr. Conley's hands were behind his back.

27.    Defendant John Doe No. 1 and/or Defendant Har handcuffed Mr. Conley.

28.    When Mr. Conley repeatedly told Defendant John Doe No. 1 that he could not breathe, Defendant replied, "Well, you're talking, aren't you?"

29.    After about a 1-1/2 to 2 minutes on the ground, Defendant John Doe No. 1 picked Mr. Conley up from the ground.

-4-

30.     Defendant John Doe No. 1 and/or Defendant Har patted Mr. Conley down both over his clothes and under his clothes around his private area.

31.     On the street and in public view, Defendant John Doe No. 1 and/or Defendant Har then also pulled Mr. Conley's shorts and underwear away from his body to look inside and put his hand halfway down Mr. Conley's shorts to search him in the front and in the rear.

32.     During the search, when Mr. Conley asked, "What's going on?" Defendant John Doe No.1 replied several times in sum and substance "Shut the fuck up."

33.     Mr. Conley was then placed in the marked police car which Defendant John Doe No. 2 was driving, and Defendants Har and/or John Doe No. 1 asked what he had been doing, where he was coming from and why he ran.

34.     Mr. Conley responded that he was scared, did not know what was going on and did not know they were police officers, explaining that he thought they were going to rob him.

35.     Mr. Conley further informed Defendant Har and Defendant John Doe No. 1 that he was on his way home from visiting a friend and that he had a job interview at Rite-Aid the following day.

36.     Defendant Har and/or Defendant John Doe No. 1 told Mr. Conley that the reason they had stopped him was that Mr. Conley was coming out of a burglary zone and they had observed Mr. Conley reach into his right pocket while he was on his bike – the same pocket from which Mr. Conley pulled his keys.

37.     Upon information and belief, there were no burglaries in said area within said timeframe.

38.     During the conversation with Defendant Har and Defendant John Doe No. 1, the door to the police car was open.

39.     After that conversation, the door was closed and Defendant Beneventi arrived at the scene.

40.     Defendant Beneventi had a conversation with Defendant John Doe No. 1 and Defendant Har at the scene.

41.     Mr. Conley was then transported to the 109th Precinct by Defendant John Doe No. 2, where he was placed in a holding cell for about thirty minutes

42.     Defendant Har then took Mr. Conley out of the holding cell, and, about five feet away and in full view of another prisoner in the cell, he put on gloves and searched Mr. Conley, touching both his front and back near Mr. Conley's private area under his underwear.

43.     Mr. Conley was then placed back into the cell for about thirty minutes.

44.     Defendant Har fingerprinted and photographed Mr. Conley and told Mr. Conley, in sum and substance, that if hadn't run from the police, "this wouldn't have happened."

45.     Defendant Har also indicated that Mr. Conley, in sum and substance, would be "getting out of there that night."

46.     At the precinct, Mr. Conley asked Defendant John Doe No. 3, a Caucasian heavy-set police officer, if he could make a phone call to his father, a retired NYPD officer, to which Defendant John Doe No. 3 answered, in sum and substance, "the phone doesn't work in here."

47.     Mr. Conley was never given the opportunity to make a telephone call from the precinct.

48.     Without giving Miranda warnings, Defendant John Doe No. 3 questioned Mr. Conley about burglaries, guns, and drugs.

49.     Under the supervision of Defendant Beneventi, Defendant Har charged Mr. Conley with Reckless Endangerment in the First Degree, a class "D" felony, and Resisting Arrest, a class "A" misdemeanor.

50.     At approximately 10:00 p.m., Mr. Conley was transported to Queens Central Booking.

51.     Defendant John Doe No. 4, the driver of the police car transporting Mr. Conley to Central Booking, said in sum and substance, "I feel silly we even have to do this," upon learning that Mr. Conley was being arrested after mistakenly believing he was running from assailants and not the police.

52.     Mr. Conley remained in Central Booking until 2:30 p.m. the following day.

53.     When Mr. Conley finally saw a judge, he learned that he was being charged with Reckless Endangerment in the Second Degree a class "A" misdemeanor, Reckless Driving, Resisting Arrest and Riding a Bicycle on the Sidewalk.

54.     Mr. Conley's case was Adjourned in Contemplation of Dismissal.

55.     After being released from court, Mr. Conley walked from the courthouse to the 109th Precinct to recover his belongings.

56.     Mr. Conley was only able to retrieve his wallet and keys.

57.     Despite having a property release and having tried several times to retrieve his bicycle, he was told by Defendants John Does Nos. 5-10 and /or Jane Roes Nos. 1-10 that they did not know where his bicycle was and later, that it may be "gone" due to flooding from Hurricane Sandy in the building where property is kept.

58.     Mr. Conley missed his job interview at Rite-Aid. When he tried to reschedule it the next day, he was told the position had been filled.

-7-

59.     As a result of this incident, in addition to losing his bicycle and losing out on a job opportunity, Mr. Conley experienced humiliation, loss of sleep, anxiety, paranoia, distrust of police, and decreased social activity.

60.     Mr. Conley's case was dismissed and sealed on March 19, 2013.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Deprivation of Rights Under 42 U.S.C. § 1983)

61.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 60, as if fully set forth herein.

62.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under the color of state law.

63.     All of the aforementioned acts deprived Claimant of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

64.     The acts complained of were carried out by the aforementioned Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

65.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

-8-

66.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Deprivation of Substantive Due Process Under 42 U.S.C. § 1983)

67.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 66, as if fully set forth herein.

68.     The Defendants' conduct herein was an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment.

69.     As a result of the foregoing, Claimant was deprived of his liberty and right to substantive due process, causing severe emotional and psychological harm.

## AS AND FOR A THIRD CAUSE OF ACTION
### (False Arrest Under 42 U.S.C. § 1983)

70.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 69, as if fully set forth herein.

71.     On September 19, 2012, one or more of the individual Defendants placed handcuffs on and detained Mr. Conley.

72.     Defendants did not have probable cause to believe that Mr. Conley had committed any crime.  Put simply, Mr. Conley did not engage in any conduct that warranted his arrest and detention.

73.     Because the individual Defendants did not have probable cause to believe that Mr. Conley had committed a crime, his detention was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

74.    As a result of his detention by the individual Defendants, Mr. Conley's liberty was restricted for an extended period of time.  Mr. Conley suffered psychological injury, and continues to suffer psychological injury.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (False Imprisonment Under 42 U.S.C. § 1983)

75.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 74, as if fully set forth herein.

76.    As a result of the individual Defendants' conduct, Mr. Conley was detained in a cell both at the precinct and at Central Booking, and at all times he knew he was detained. Moreover, Mr. Conley did not consent to his confinement.

77.    As the behavior of Mr. Conley provided no justification for these Defendants' conduct, the Defendants' actions were unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

78.    As a result of Defendants' conduct, Mr. Conley suffered loss of freedom, psychological injury, and continues to suffer psychological injury.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Excessive Force Under 42 U.S.C. § 1983)

79.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 78, as if fully set forth herein.

80.    The level of force and the offensive contact employed by Defendants was excessive, objectively unreasonable and otherwise in violation of Claimant's constitutional rights.

81.    As a result of the aforementioned conduct of Defendants, Claimant was subjected to humiliation, offensive contact, excessive force and sustained psychological injuries.

-10-

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Unlawful Search Under 42 U.S.C. § 1983)

82.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 81, as if fully set forth herein.

83.     One or more of the Defendants searched and touched Mr. Conley under his undergarments both on the street in public view and at the precinct, without consent and in the absence of any individualized reasonable suspicion that he was concealing weapons or contraband.

84.     As a result of the foregoing, Mr. Conley was subjected to an illegal and improper strip search.

85.     The foregoing unlawful strip search violated Mr. Conley's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

86.     As a result of this search, Mr. Conley suffered psychological injuries, and continues to suffer psychological injury.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Failure to Intervene Under 42 U.S.C. § 1983)

87.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

88.     Defendants had an affirmative duty to intervene on behalf of Mr. Conley, whose constitutional rights were being violated in their presence by other officers.

89.     The Defendants failed to intervene to prevent the unlawful conduct described herein.

90.     As a result of the foregoing, Claimant was put in fear of his safety and subjected to unjustified psychological and physical abuses.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Supervisory Liability Under 42 U.S.C. § 1983)

91.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 90, as if fully set forth herein.

92.     The supervisory Defendants personally caused Claimant's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Deprivation of Rights Under the New York State Constitution)

93.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 92, as if fully set forth herein.

94.     By the actions described above, the individual Defendants used unnecessary and excessive force and subjected Mr. Conley to unreasonable offensive contact and/or excessive force not reasonably justified by any circumstances and used for no proper purpose, thereby violating Claimant's rights secured by Article 1, Section 6 of the New York State Constitution.

95.     As a consequence thereof, Claimant has been injured.

## AS AND FOR A TENTH CAUSE OF ACTION
### (False Arrest Under State Law)

96.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 95, as if fully set forth herein.

97.     On September 19, 2012, one or more of the individual Defendants placed handcuffs on and detained Mr. Conley.

98.     Defendants did not have probable cause to believe that Mr. Conley had committed any crime.  Put simply, Mr. Conley did not engage in any conduct that warranted his arrest and detention and there was no legal justification for his arrest.

99.     As a result of his arrest and subsequent detention by the individual Defendants, Mr. Conley's liberty was restricted for an extended period of time without probable cause.  Mr. Conley suffered psychological injury, and continues to suffer psychological injury.

100.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

101.    As the employer of the individual Defendants, Defendant City is responsible for Mr. Conley's injuries under the doctrine of *respondeat superior*.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (False Imprisonment Under State Law)

102.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 101, as if fully set forth herein.

103.    On September 19, 2012, as a result of the individual Defendants' conduct, Mr. Conley was detained in a cell both at the precinct and at Central Booking.

104.    Because these Defendants did not have probable cause to believe that Mr. Conley had committed a crime, no legal justification existed for his arrest and detainment.

105.    The confinement of Mr. Conley was not otherwise privileged.

106.    Mr. Conley was conscious of said confinement and did not consent to same.

107.    As a result of the foregoing, Mr. Conley was falsely imprisoned and his liberty was restricted for an extended period of time.  Mr. Conley suffered loss of freedom, psychological injury, and continues to suffer psychological injury.

108.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

109.    As the employer of the individual Defendants, Defendant City is responsible for Mr. Conley's injuries under the doctrine of *respondeat superior*.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### <u>(Unlawful Search Under State Law)</u>

110.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 109, as if fully set forth herein.

111.    One or more of the Defendants searched and touched Mr. Conley under his undergarments both on the street in public view and at the precinct, without consent and in the absence of any individualized reasonable suspicion that he was concealing weapons or contraband.

112.    As a result of the foregoing, Mr. Conley was subjected to an illegal and improper strip search.

113.    The foregoing unlawful strip search violated Mr. Conley's constitutional right to privacy.

114.    As a result of this search, Mr. Conley suffered psychological injuries, and continues to suffer psychological injury.

115.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

116.    As the employer of the individual Defendants, Defendant City is responsible for Mr. Conley's injuries under the doctrine of *respondeat superior*.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (Assault Under State Law)

117.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 116, as if fully set forth herein.

118.    By reason of the foregoing, the Defendants placed Mr. Conley in apprehension of imminent harmful and offensive contact, thereby committing an assault.

119.    As a consequence thereof, Claimant has been injured.

120.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

121.    As the employer of the individual Defendants, Defendant City is responsible for the injuries Mr. Conley suffered, and continues to suffer, as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### (Battery Under State Law)

122.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 121, as if fully set forth herein.

123.    By reason of the foregoing, the individual Defendants unreasonably struck Mr. Conley in a harmful and offensive manner and subjected him to non-consensual physical contact, thereby committing a battery.

124.    As a consequence thereof, Claimant Steven Conley has been injured.

125.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

126.   As the employer of the individual Defendants, Defendant City is responsible for the injuries Mr. Conley suffered, and continues to suffer, as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### (Negligent Hiring and Retention Under State Law)

127.   Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 126, as if fully set forth herein.

128.   Upon information and belief, Defendant City of New York failed to use reasonable care in the hiring and retention of the aforesaid Defendants who conducted and participated in the arrest of Claimant Steven Conley.

129.   Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of Defendants Har and Beneventi and John Doe No. 1 and John Does Nos. 2-10 and/or Jane Roes Nos. 1-10 to engage in the wrongful conduct heretofore alleged in this Complaint.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
### (Negligent Training and Supervision Under State Law)

130.   Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 129, as if fully set forth herein.

131.   Defendant police officers owed a duty to act according to the standard of ordinary care of a police officer.

132.   Defendant police officers breached that duty by failing to act as ordinary police officers would.

-16-

133.    Upon information and belief the Defendant City of New York failed to use reasonable care in the training and supervision of the aforesaid Defendants who conducted and participated in the arrest of Mr. Conley

134.    As a result of the individual Defendants' conduct, Mr. Conley has been injured.

135.    The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

136.    As the employer of the individual Defendants, Defendant City is responsible for the injuries Mr. Conley suffered, and continues to suffer, as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress Under State Law)

137.    Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 136, as if fully set forth herein.

138.    One or more of the Defendants intentionally and deliberately inflicted emotional distress on Mr. Conley by using unnecessary excessive force, or subjecting him to unnecessary non-consensual physical contact during the course of his false arrest and unlawful imprisonment, or by violating his constitutional rights or knew or should have known that emotional distress was the likely result of their conduct.

139.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

140.    As a result of the Defendants' intentional, extreme and outrageous conduct, Mr. Conley was, is, and, with a high degree of likelihood, will continue to be emotionally distressed.

-17-

141.     The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

142.     As the employer of the individual Defendants, Defendant City is responsible for the injuries Mr. Conley suffered, and continues to suffer, as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

### AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress Under State Law)

143.     Claimant STEVEN CONLEY repeats and re-alleges the allegations contained in paragraphs 1 through 142, as if fully set forth herein.

144.     One or more of the Defendants negligently inflicted emotional distress on Mr. Conley.

145.     Defendants had a continuing affirmative duty to perform their duties as police officers in such a manner as not to inflict emotional distress on Mr. Conley.

146.     Mr. Conley never interfered with the police officers obligations under the above-described duties.

147.     As a result of the Defendants' negligent conduct, Mr. Conley was, is, and, with a high degree of likelihood, will continue to be emotionally distressed.

148.     The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

149.     As the employer of the individual Defendants, Defendant City is responsible for the injuries Mr. Conley suffered, and continues to suffer, as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

-18-

## DEMAND FOR A JURY TRIAL

150.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Claimant demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, STEVEN CONLEY prays for the following relief:

(a)    compensatory damages in an amount to be determined at trial;

(b)    punitive damages in an amount to be determined at trial;

(c)    reasonable attorneys' fees;

(d)    costs and expenses; and

(e)    such other and further relief as is just and proper.

Dated:        Queens, New York
              December 14, 2013

                              ROCHELLE S. BERLINER, ESQ.
                              Attorney for Claimant
                              118-21 Queens Boulevard, Suite 504
                              Forest Hills, New York 11375
                              (718) 261-5600

By:    _Rochelle S Berliner_

                              Rochelle S. Berliner (RB 7463)